Case 22-5409, Bailey White v. Hamilton Cnty Gov at all, argument not to exceed 15 minutes per side. Mr. Tidwell, you may proceed for the appellant when ready. Mr. Tidwell, I see you've reserved two minutes for rebuttal, is that correct? Yes, Your Honor. Okay, you may proceed. Thank you. Good morning, Honorable Judges of the Sixth Circuit. My name is Gerald Tidwell, and I am a member of the Hamilton Cnty Tennessee Bar for the last 40 years and a member of the Bar of this Court for 34 years. I'm assisted by Matthew Tidwell, my associate in this case. I represent Deputy Jacob Goforth of the Hamilton Cnty Sheriff's Department, and I believe my client has a case worthy of your review, and I dare say it's one you probably have not seen before. Unusual Circumstances. I believe this is a case of first impression. I don't believe there's a case where a police officer has been denied qualified immunity for failing to intervene in an alleged violation of the First Amendment, specifically the establishment clause. I'm not asking this court to determine whether Daniel Wilkie violated Riley's constitutional rights by baptizing her. I'm not asking you to find that he violated her constitutional rights after citing her and then baptizing her, and I'm not asking this court to determine whether or not she was seized when she left her mother-in-law's driveway and followed Mr. Wilkie to the boat ramp on what we call Soddy Lake in Chattanooga, it's part of the Tennessee River, where she was baptized. I'm asking this court to decide if any deputy in the shoes of Goforth had a constitutional obligation to intervene in this baptism based on the facts he had in front of him and what he knew, what he saw, what he heard, what he was told. Goforth was asked to witness a baptism, which he described in his deposition testimony as odd. He drove up and saw two vehicles, a police car and Ms. Riley's vehicle. He saw Ms. Riley chatting amicably and laughing with Wilkie. A lot of your brief is about the facts, and the district court made certain findings and said there are findings of fact, or there's enough here that a jury could believe that your client knew that Riley was being coerced. So what do you say to that? Well, I disagree with Judge McDonough's conclusion. I have great respect for him. I've known him a long time, but I think that I have a fundamental disagreement. He did find that there were enough facts, and he found it. I thought he was saying it was an obvious violation, which is a little different standard than the typical clearly established scenario. Well, that's a legal question. Even if we assume all the facts, is there an obvious violation rather than clearly established law? But as to the facts, what can we do about it as an appellate court on QI? Well, I think you can deal with the legal conclusions. I just recited some facts because I thought it was important to start off with that. I can go forward without that information. Let me ask one more question. Where is Mr. Wilkie? So any liability your client might have is dependent on Mr. Wilkie's primary conduct, right? If your client is liable, and I know you think your client is liable, but if he could be liable, it's only as a derivative matter. Ordinarily, we see these cases, we have all the defendants in front of us. Why do we not have ... Where is Mr. Wilkie in this process? Hamlin County and Mr. Wilkie's motions for summary judgment are pending currently and haven't been ruled on. Which is odd. I'm sorry? Which is odd. Normally, the district judge disposes of all of them, or that's the way I've always seen them in my last ... In my experience. ... years on the bench. I'm sorry, Your Honor. And then we sort out who might be liable and who might not be. But here, would we be asked, in effect, to determine Mr. Wilkie's rights when he's not here before us? No, I'm asking to determine whether or not Jacob Goforth had to intervene in this baptism, whether the law dictates that that's what he should have done. I'm not asking you to rule on Mr. Wilkie's behavior. It obviously affects this. But the judge chose to rule on my motion first. Now, I filed my motion ahead of the deadline because I felt I had adequate information to do it. And there were 10 consolidated cases, and I had other motions I had to get ready. So I created an order to do them in and started filing them, and have now filed all of them. Why he chose to rule without the others, I don't know. Okay. However, to go back to what I was saying, whatever you see in the dash cam video, at least, or the cell phone video that gave Goforth's shot are undisputed facts. And this conversation, whether we talk about the facts or not, they're there. And here ... What are the undisputed facts? Because I'm a little unclear from his order. Well, I think the facts that are undisputed are that, what I was just saying, when Goforth pulled up, he saw Wilkie and Riley laughing and talking. She thanked Goforth for being there. When she was baptized, she hugged Wilkie when she came out of the water. This is all Goforth saw and heard. I'm sorry. At page 16 of his opinion, he says, he was made aware of the purpose of the encounter prior to his arrival, and a reasonable jury could find that he should have known Riley was unreasonably seized under the circumstances. I'm now talking about the seizure aspect. So unreasonably seized under the circumstances. Goforth knew that he and Wilkie were both on duty and learned that Riley had just been cited for possession of marijuana. So what he's saying is, and I want to extrapolate this out, first, as I understand what he's saying wrong, that there's an issue of fact as to whether he knew she was seized pursuant to the arrest for marijuana, and then following on that, if you go all the way down to the establishment clause, that it's obvious that someone who's arrested or seized pursuant to a criminal violation cannot be coerced into baptism. And thus, he had a duty to intervene just like he would any constitutional violation, as if Wilkie was beating her. I think there's actually something incorrect in there. Wilkie, excuse me, Goforth testified he was told she'd been cited, not what for, and it was a citation, not an arrest. She was not restrained. She drove her own car to the boat ramp, followed Wilkie there, it's in the video. You don't see a car in front of him. She gets out, and what Goforth sees is two people carrying on a consensual conversation and apparently enjoying what they're doing, talking to each other, and eventually... What about the district courts? What do we do with the district courts finding that he should have known she was seized? Is that finding a fact or conclusion of law, or what is it? I find it to be a conclusion of law because you have facts right in front of you that are in a video that don't indicate that she's seized. She appears completely free to leave at any time, and does Goforth reasonably know that she's unreasonably seized based on the facts he has in front of him, including the fact that she had been cited, because she was unrestrained. She was in her own car. That doesn't seem like a seizure. And the question becomes, should he reasonably have gone farther than that, and does he get into the slippery slope of trying to enforce, by intervening in a religious ritual, enforce some establishment cause violation that he's not seeing in front of him? To me, that's the legal issue under the qualified immunity analysis, as well as the First Amendment analysis, where we look at whether this is a constitutional violation, or is it clearly established? Is it beyond debate? Is it so obvious that any reasonable officer would know that there's a violation going on? Now, Judge McDonough may have concluded that. That I think is a question of law based on the interpretation he makes of the facts, which I don't think binds you. I think you can reverse on the law. And I think when we look at this case, and we look at some of the case law, you yourself, Judge Tappar, wrote in the Rabie case that we want our officers protecting the public, not studying case law. Considering the difficulty the courts and lawyers have in navigating the First Amendment, when you look at the Bremerton case, considering how difficult it is, can we really put it on a police officer to have such a firm grip on this law, that they know in the field, on the fly, when to jump in and intervene in a religious event? And if so, if they do that, and they're wrong, are they not also violating the free exercise right of that person? If he had arrested her for cocaine possession and said, I was on the way to the police station, talked to her about baptism, and stopped to baptize her, would he have a duty to intervene at that point? I think he would, because she would have been in custody. She would have been in cuffs in the back of a car in custody. She wouldn't have been free to come and go. So why is that any more obvious than this? Explain that to me. Does it all turn, in your mind, and whether or not there's a seizure? To a degree. The reason that's more obvious is she's clearly being coerced. Judge McDonough used the lens of coercion to analyze this case, and he utilized cases that don't really apply to the First Amendment, because there aren't any. He looked at cases of employment law, et cetera. I'm sorry. Is there anything in the record that suggests that your client knew, I mean Riley alleges that Officer Wilkie told her, you'll go to jail, you have a choice, go to jail or be baptized. Is there anything in the record suggesting that your client knew that Wilkie made that statement? None, Your Honor. He was at the scene of the detention. He was in this event for a few minutes, and while he said, it was odd, I didn't see anything illegal going on, is what he said in his deposition testimony. That's why I didn't do anything except videotape it. Yes. If he knew that fact, that might be a different case, but that's not our case. No, it's not. Ms. Riley herself, who's now deceased, unfortunately, and can't be re-deposed, said that she knew what she was doing. She actually backed off of that statement in her testimony, in her deposition. She alleges it in her complaint, but what my point has been is Goforth is not there. We're not there to see any of this stuff, and when we look at a First Amendment violation and we consider how difficult it is to handle, determining what's left of the Lemon Test, whatever that is, that's been analyzed, we're now looking at private action versus public action of public officers more. We're now looking at historical and factual context, and I think there is factual context here. The District Court analyzed this largely under the Lemon Test, which we now know is not the test. I mean, the Supreme Court told us pretty clearly we're done with the Lemon Test, so what do we do about that? Well, I think that that's an incorrect way to analyze it, and I think it is reversible. I don't understand why the Ninth Circuit used the Lemon Test in the Bremerton case, and I understand that there was an attempt to have a sua sponte en banc hearing. It's recorded. It's in the record, because there was so much disagreement. I don't know why courts still are looking at that based on my study of this, and understand I'm not doing First Amendment work all the time. I'm not a First Amendment lawyer. This was new to me when I started studying it, but I don't understand why that's applied, and I don't think it is applicable. It's a matter of whether Jacob Goforth was acting as a private citizen or was he actually performing a public duty or some official duty as a police officer. It goes to the factual context of what was going on there, and we look at whether or not this is an act of government as opposed to an act of a private person. If we go back a couple of steps, another aspect of this case that I think is confusing that's illuminated a little bit by your discussion with Judge Sipar is what was pled here? Was the plaintiff's theory a failure to intervene in connection with somebody that was in custody, and if so, when did the custody start and stop, or did they actually plead a civil conspiracy case? They pled a duty to intervene in a baptism. I don't see the pleading. But they had to get Goforth somehow involved in the baptism. It seems to me you can read the complaint to say that Goforth and Whaley were in a conspiracy to accomplish this. What happened is the judge seemed to have converted that into she was seized and it was a failure to intervene. It was a continuing seizure, even though she was in her own personal car driving. After she got the citation, that's in the record, he'd given her the citation in her ex-mother-in-law's driveway. I don't see the conspiracy necessarily specifically alleged, but I say in my brief that there's no allegation of failure to intervene in a Fourth Amendment seizure. We think it's been weighed, and if it hasn't, that the elements aren't there. How could Goforth, based on what he knew, that we know from the video and audio, how he doesn't feel free to leave, based on what's in front of her, regardless of what the district judge found? I see that I'm stopping. Any other questions? Thank you, counsel. Thank you very much, your honors. Good morning, your honors. I'm Robin Flores of the Chattanooga Bar. Tidwells and I know each other well, and I consider her very good friends, and they made my task difficult today, because they did do a very good brief, but we're not conceding certain points that I think your honors have asked them about. One would be, first of all, the issue of whether or not this court has jurisdiction over this. I'm sorry to interrupt you. Do you want to answer Judge McKee's question first, because I'm interested in the answer to that as well, which is it seems to me you pled a civil conspiracy claim, and as to go forth, Judge McDonough converted that into something you didn't plead, which is some kind of duty to intervene that's independent of that in the seizure. What's your answer to that? I think we did plead that, your honors, that we also raised that in our response to summary judgment, but the main point would be- Well, even if you could sort of read your complaint to be a little vague on whether you are asserting duty to intervene or a civil conspiracy, it's in the motion, in the response to the summary judgment motion, that you pretty clearly say, oh, our theory is civil conspiracy. Yes, your honors, and I think we'd have to extrapolate what we were arguing from the main point is that that would have been an issue, whether or not Riley raised the issues properly in the complaint or in response to summary judgment, are really not proper for interlocutory appeals, which we claim. It should have been raised on a motion to dismiss. The court found, the trial court specifically found facts that should go to a jury. Let me ask you a question. If you plead one claim, let's say you plead a Fourth Amendment claim, but not a First Amendment claim, and the trial court can convert your claim into a different claim and deny summary judgment to a defendant that you didn't even plead? I'm obviously not, you can't with a straight face say that, Judge, but again, that's what we have. It's from the district court. The district court found with the facts before it, the facts and the motions for summary judgment and the responses, that there was that violation. I don't understand your theory that we can't review the question of whether qualified immunity was denied in connection with a claim that wasn't raised. It seems to me that if it is true that qualified immunity was being addressed in the context of a claim that wasn't raised, then that's exactly what we should be reviewing. I don't have a very good response to your honor on that one, other than, again, that this was an issue that should have been raised on a motion to dismiss, rather than on a- How do they, so I'm a little lost in that, so now let's go back one step, because this is what you're, I think this is what you're saying, and I just want to be clear. You're saying, well, they moved for summary judgment on the civil conspiracy claim. They didn't move for summary judgment on the duty to intervene claim, and I actually brought a duty to intervene claim in the complaint, and so while the district court, you might be right, Judge McKeague, the district court should have granted summary judgment to the intervene, the district court properly denied it. Is that your argument? Does that make sense? Did you bring, let me ask you very simply, did you bring both claims in the complaint? I'll have to admit that I didn't review our complaint before this morning. I was relying on the language from the district court judge, and what he reviewed, and what he opined in his memorandum. Well, if we even go back further, somehow it seems to me that you have to tie the actions of Goforth to something that started back at the mother-in-law's house. Yes. You're not alleging or contending today that Goforth had anything to do with what happened at the mother-in-law's house. No, we are not, Judge. So you concede that he didn't have any involvement on this whatsoever until he gets the call to come to the boat landing to witness the baptism. That's correct, Judge. So if he was, if she was seized at the time of the original citation, and if that was somehow wrongful, Goforth's not involved? Correct. There's another deputy there, but it was not Mr. Goforth. So the only way that Goforth is involved in any alleged seizure would be if the seizure somehow continued up to the time she got to the boat launch, and or she was seized, released, and then seized again. Seems like those are the possibilities, right? Those are the two possibilities. Which one are you claiming? It's continuous seizure here, Judge. How was she continuously seized under the facts of this case? She's given a citation. She searched. She's there for almost two hours, an hour and a half, made to do certain things in front of a camera, given the alternative, and even given a promise by Mr. Wilkie that, hey, look, I'll go to court and talk to you, and then, well, come on and come on with me and baptize me, or let me baptize you, you can go home. But Goforth doesn't know any of that. Not until he gets toward the boat ramp, Judge. And he was made aware, looking at Judge McDonough's decision, first, Mr. Goforth was aware of a power differential concept between... That's always true, right? That would have been true in our Jacobs case, where we said, if it's a continuing seizure, in response to Judge McKeague, you said this is a continuing seizure. If it's a continuing seizure, there have to be facts from which an officer knows that that seizure is going on. And so even in Jacobs, we had a second officer, and we said there have to be facts. It can't be just that they're police officers, right? Well, we have to take a look at the totality of the circumstances, as Judge McDonough did. What are the facts that let Goforth know that a seizure had begun at the house, and was continuing there, even though she drove in another car, as your friend mentions, showed up, I mean, that's undisputed, right? She even testified, I thought, in her deposition, that I knew I didn't have to go. Maybe I'm overstating it, but something to that effect. That's correct, but Mr. Goforth gets radioed to come to the boat ramp, was asked to participate in this baptism, was confused by the request, and even testified that he may have questioned him, or even would ask him to reconsider this, or what are you really doing? He believed that it was unusual because of the season, it was cold weather, the setting, and at night. As Judge McDonough opined and found, was that this was such an unusual novel set of facts, relying on Hope V. Pelzer, that the police officer can still be on notice, that his conduct violated clearly established law, but looking at... Fourth Amendment law? Because we're trying to get to the seizure now. Yes. Well, how? I mean, how do we know, I think what Judge Tappara is trying to get at, is how would Goforth have known that she was being... It was in the state of continuous seizure, when he wasn't there in the driveway, he didn't know about any of these things that had happened. He shows up at the boat ramp, she drove her own car, she's chatting with him. We're looking for the facts to help sustain the district court here. You've got two armed police officers in a very unusual type of situation, where the officer comes up and he sees something is wrong, it is just so obvious that something is amiss here. Can I change one fact and you tell me how the officer would know the difference? The one fact I'm changing in this case is, he gives her the citation, they strike up a discussion, she says she wants to be baptized because she wants to stop smoking marijuana or whatever it is, and he says, I can baptize you, let's go to the lake. She follows him, he calls Goforth, Goforth shows up. So now there's no seizure, right? But every other fact is the same, would he have a duty to intervene? The facts seem... That fact scenario seemed different than what happened here. No, I know, I said I changed one fact. I changed the coercive aspect of it. If the outset where Goforth wasn't present, I'm changing that. My hypothetical, duty to intervene? It would seem like it's almost now two separate events where you have something that breaks that causal chain. But Goforth doesn't know that. Understood. Okay, so go back, just answer mine. You can say yes or no, and then you can explain it. Same exact thing, the only thing is she's going there, everyone agrees, it's undisputed she's going there voluntarily. Goforth doesn't know she's going there voluntarily, but she is. Duty to intervene? Using that set of facts where it's undisputed that she voluntarily went... She told Wilkie, I want to be baptized. And Wilkie says, okay, let's go to the lake, and she says, great, I'll drive in my car. Okay? Then I would think those facts would change the scenario. Again, we have something completely different. No duty to intervene. No duty to intervene, but sure. Wait, now let me change the fact back. Did Goforth, what in the record shows that Goforth knows that bargain was cut? Because everything else is the same at the lake in my hypo. So what shows that Goforth knew the bargain was cut? Again, it's the totality of all the circumstances, Judge. That he was aware that Ms. Riley had been issued a citation. But he would have been aware of that in my hypo. Well, we're talking about just your honor's hypothetical? No, no, no. I'm just trying to figure out what fact, and then I'll let the other judges or I'll let you go on. Yes, sir. What fact changes this case? If everything at the lake is the same, and something happened Goforth wasn't aware of at the house, whether it be coercive or voluntary, does he have to be aware of that fact to have a duty to intervene? Specifically, I would say no, because here's what we have in the record. Is that Mr. Wilkie asked Mr. Goforth to watch his back. Mr. Wilkie also indicated that he took the video because he wanted to be protected in case there were some claims like this being made. He didn't say claims like this. Well, if there's something amiss, because he knew where the hands would be during a baptism, that there would be some kind of claim. So going back to the district- It's not a First Amendment claim or a Fourth Amendment claim. He was worried about some allegation of sexual assault, which is not before us at all. There's been no allegation that I'm aware of. That's correct, Your Honor. But again, this is a trained police officer who knew what power differential was between an arrestee and the arrestor. Can I take you in a slightly different direction? Let's just assume that she was coerced. You still have to get past the clearly established prong here. What we oftentimes see is if there isn't a similar case, then you simply say, hope v. Pelzer, something is obvious. You don't have a case that's even remotely close to this, I don't think, do you? So you have to fall back and say, well, it's obvious. Yes, Your Honor. That's the linchpin of this that Your Honor is going to have to struggle with. You can see- Let me just finish up with that. The interesting part that people don't focus on when you address hope v. Pelzer is that when you read that carefully, there were cases that didn't say you can't chain somebody up in the yard of a prison in the hot sun, but there were already cases that said, for example, you can't handcuff them to the bars inside the prison. So that case law existed under hope v. Pelzer. So what case law do we have that makes this so, even though it's not the same facts, that makes this not just strange, we all agree this is strange, but so strange as to obviously violate somebody's constitutional rights? I think the best case comes out of this court in 2013, Martin v. City of Broadville Heights. And the court was looking at particular situations and said, look, we've got to zoom in. Courts have to zoom in close enough to ensure a right is defined, but not too close. And I like some of the phrasing from the Sixth Circuit in this decision at 960, a court can define a right too narrowly, too. For example, people are free from needless assaults by left-handed police officers during Tuesday siestas. And I think that's what we're all grappling here with, is just how close do we have to zoom in at this stage, when we're talking about interlocutory appeal on qualified immunity, and determine what's wrong about this? I think going back to Judge- So your argument would be that it was so obvious, both from the standpoint of an unlawful seizure claim and an establishment clause? Yes, sir. Even though there are no cases that even remotely discuss establishment clause claims in any sort of similar context? Not even one failure to intervene claim. Well, again, Your Honor, it's such a novel type of situation that that is exactly what we're saying. Because I fall back on- The more weird it is, the more obvious it is? Yes, in a way. If we look back at Judge McDonough's opening, he uses words such as atypical civil rights case and desacralized right. But wouldn't it be, okay, so let's say, just to finish this point, I don't want to just get into Wilkie, but let's say they actually, like, he held her, meaning go forth, there he held her so the baptism could occur, right? And there's actual coercion. That seems like what we're talking about. When there's no case on this, but it's obvious, we're not going to say he held her with one hand or he held her with two hands, we're going to say he participated in the actual coercion. Here, what you're taking this one step removed and saying, yeah, we agree, Judge McKee, there's no clearly established law. There's no case, meaning case showing clearly established law that you have a duty to intervene. But it's so obvious that A occurred, meaning the baptism, the actual coercion, that B has to be true too. Isn't that what you're saying? This is one step even further removed. In other words, in Hope, it's so obvious that you handcuffed this person illegally that the other guard has to go and unhandcuff it. We have an almost similar situation here, using that scenario, Your Honor. Rather than go forth having hands on, he was there lending his, we call it a force multiplier in the military. You bring in- He didn't know he was a force multiplier because what he knew is he was coming there to video it to make sure. Go back to my hypo. All he could have known is my hypothetical facts. He was coming to video it to make sure that sexual assault allegations weren't made. That's what he understood. And a trained police officer, in that scenario- If I'm a trained police officer, I think, yeah, people make sexual assault allegations against cops. They would also, Your Honor, in this particular situation, given what we know from the record, Mr. Goforth had to have known there was something wrong here, something else going on here. But does, I guess, two questions. First of all, I don't think the record shows that he was asked to come video this. I think the record shows that he decided on his own he was going to video it. That's correct. Yes, sir. So putting that aside for just a second, you have to get by knowing something is wrong to knowing it's a violation of somebody's constitutional rights. People do all kinds of things that are wrong and it doesn't rise to the level of a constitutional violation that gets you into federal court. So, again, let's take a look at that particular quote, again, Your Honor, and I'm looking at Herring v. Slewowski, I hope I pronounced that right, 2013 decision. Some violations of constitutional rights are so obvious that a material similar case is not required for the right to be clearly established. In this particular case, Mr. Goforth knew that baptisms or doing things off-duty like that was not a part of their policy, not what they were supposed to do. Mr. Wilkie was not the chaplain and he had become aware that there had been, of course after the fact, there had been some citation written at some other time, prior time. He had a duty to do more than just sit there and cover his own self by recording this. Just to maybe finish this up, just out of curiosity, what was his duty at that point? Was his duty to step forward and stop it and say, I mean, one thing he could say is I'm only part of this and I can leave, and then you'd say he shouldn't have left. So he's there. He can't leave because he's got himself in this situation. He then had a duty to prevent this from happening. Yes. Even though she seemingly was voluntarily, I mean, we've all watched the tape. She's seemingly, at least, voluntarily doing this. But again, he's in, Mr. Goforth testified in his deposition that he worked at the jail and he knew, again, about power differentials. He took, he, he had gone on. Okay. So those are the power differential. Even if she wanted to do it and wasn't being conversed, coerced, he still had a duty to stop it. It's a fact issue for a jury judge because Mr. Goforth had never. What your claim is. Are you claiming that he had a duty to stop it? Yes, he did. He definitely did. Even if he knew she was not being coerced or had no reason to think she was being coerced Or is the coercion the key? The coer... Well, as the, as I cited in my brief, the lack of coercion doesn't end the analysis there. However, let's take it with coercion. Again, this is a trained police officer. He's armed. Wait. But go back and answer Judge Larson's question. Because I think that, that is a very important question. On coercion. Yes or no, he has to know she's being coerced. If I can answer it this way, try to answer it this way. Answer it yes or no and then you can, I'll let you finish and then I think your time's up. Did he have to know? I, at that time, I don't think he had, would have had to know. But he had a duty at the time to do more than just go along with Mr. Wilkie. Because where does that duty come from? It comes from his duty as a police officer to protect. No, but we're in the Constitution. I get that. That's a different issue. That would be a 14th Amendment issue, Judge, where you have a state-created zone of danger here. And this officer's a part of it. And he has, he does nothing. Wait a minute. State-created zone of danger applies to third parties. It does here. If we're talking about Mr. Wilkie. Not part of the state. It applies to something being done by a private actor. That's what the state-created danger doctrine deals with. And along with... We don't have a private third party here. We've got two government actors. If we were to take, the best I could sum this up, given the bizarre nature of this case, is that what is not in the record is Mr. Goforth asking Shandell Riley any questions herself. Do you want to be here? Did you want to be a part of this? He just went along with Mr. Wilkie doing... So to finish this up, in your opinion, the constitutional duty is obvious that he had a duty to at least inquire of her directly to see if she wanted to do this. I would think so, Judge. Because he makes the comment about, I want to record this if there's any complaints about sexual assault. He doesn't even bother to talk to the woman. Okay. Anything further? Thank you, counsel. Thank you for bearing with me. If I could, I feel like I didn't answer some of the questions as thoroughly as I'd like. I don't see an allegation of civil conspiracy in the complaint. It's certainly implied, but I don't think it's clear enough for me to have been... You concede there's a duty to intervene claim in the complaint? There's a duty to intervene claim in the baptism. There's not a Fourth Amendment seizure duty to intervene claim. We didn't argue it in summary judgment, neither did the plaintiff, and now we're being hit with it. We feel it's been waived and it's put us in a prejudicial situation. Did he have a duty to inquire, to Judge McKee's point that he finished with? Under the circumstances, I don't think so. He saw nothing that triggered an idea that she did not want to be there. I'm not talking about opinion. I'm talking about video and audio. What about just the crazy nature of this? How many times has he seen another officer baptizing someone he earlier cited in the day? There's no comparison. So he has no duty to figure out what's going on at that point? He's not seeing someone arrested. This isn't typical police action. They're not keeping the peace or making an awful arrest. Wilkie's baptizing her in the river. I don't know that that triggers him into a law enforcement stance, starting to question people about why it's happening. Maybe in a context, it would have been better if he'd done that, I agree, but we don't know what our answer would be. Is there any significance to the fact that I think the record showed that Goforth knew that Wiley was a minister and thought that this was somebody that he knew, and Wiley probably shouldn't have been baptizing her during official police hours? It wasn't as if he didn't. He wasn't already trained to baptize people, and apparently did that on a regular basis. I think there is a significance to it, and I think part of the significance of that is that when he gets there, he thinks that she's somebody he knows and only finds out she's been cited later after he gets there, and I don't really think that triggered him. That could explain the benign motive for him showing up. It doesn't necessarily answer whether he had a duty or not after he found out that she wasn't one of his friends. Is he seizing her by just being there and not inquiring? Is he violating the establishment clause by not inquiring? I think where we're headed is if this case is not reversed and qualified immunity is not granted, we've opened the door to this whole new area of duty to intervene in civil rights law applies to the First Amendment, which is so difficult to navigate. But you concede it applies to the Fourth Amendment, right? Oh, yes, it does, without doubt, Judge. But you argue the Fourth Amendment doesn't apply here because she wasn't seized. Exactly. I don't think the elements of seizure are there. What did Goforth see that would reasonably make him inquire of her, are you being seized unreasonably, or to Wilkie, are you seizing her unreasonably? When Wilkie says, watch my back, she thanks him, and then he takes his duty belt and equipment off. He's in compression shorts and a t-shirt. What is coercive about that? He's not in his police gear. He's got a guy with a gun standing. Well, yeah, but he didn't pull the gun or touch her or talk to her or give her a command. He didn't do any police action toward Riley. He simply shot a video and left. I think he handed him the towels when they came out of the water, I'm sorry. But he didn't sing hymns or read the Bible or advocate for the baptism. He didn't do anything that moved it forward other than his mere presence, which is not enough to establish a seizure, and I don't think it's coercive under these facts. Any further questions? Thank you, counsel. Thank you both very much for your interesting arguments and briefs. The case will be submitted. Thank you, your honor. If we can be excused. You can.